IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20-cv-00320-WCM

| IAN PAUL STEPHENS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | AND ORDER |
| | ) | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on the following motions:

(1) Plaintiff's Motion for Summary Judgment (Doc. 16).

(2) Plaintiff's Motion to Remand (Doc. 18).

(3) Defendant's Motion for Summary Judgment (Doc. 21).[1]

I. Procedural Background

Plaintiff Ian Paul Stephens ("Plaintiff") filed applications for disability insurance benefits and supplemental security income, alleging disability beginning on January 30, 2007. Transcript of the Administrative Record ("AR") 210-215; 216-225. He subsequently amended his disability onset date to August 24, 2017. AR 39.

---

[1] The parties have consented to the disposition of this case by a United States Magistrate Judge. Docs. 13 & 14.

1

On December 16, 2019, following an administrative hearing at which Plaintiff appeared and testified, an Administrative Law Judge ("ALJ") issued an unfavorable decision. AR 12-33. That decision is the Commissioner's final decision for purposes of this action.

## II. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairment of "spine disorder." AR 17. After determining that Plaintiff's impairment did not meet or medically equal one of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform light work…. In particular, the claimant can lift or carry up to 20 pounds occasionally and 10 pounds frequently. He can only stand or walk for approximately 4 hours of an 8-hour workday and sit for approximately 6 hours of an 8-hour workday with normal breaks. He can frequently push/pull with the lower extremities. He is limited to occasional climbing of ramps and stairs, never climbing ladders, ropes or scaffolds, occasional stooping, kneeling, crouching and crawling and no concentrated exposure to hazards such as unprotected heights or dangerous moving machinery.

AR 20.

Applying this RFC, the ALJ found that Plaintiff had the ability to perform certain jobs that exist in significant numbers in the national economy such that Plaintiff was not disabled during the relevant period. AR 26-27.

### III. Plaintiff's Allegations of Error

Plaintiff contends that the ALJ erred in his consideration of certain opinion evidence, and when evaluating Plaintiff's subjective complaints and the testimony of the vocational expert ("VE"). In his Motion to Remand, Plaintiff also contends that this matter should be remanded because 42 U.S.C. § 902(a)(3) is unconstitutional.

### IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's

3

findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that he is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

V. Discussion

A. Consideration of Katie Martin's Opinion

For applications filed on or after March 27, 2017, such as Plaintiff's, the Administration has changed how adjudicators assess medical opinions and prior administrative medical findings. See 82 Fed. Reg. 5844-01; 20 C.F.R. § 404.1520c(a)); 20 C.F.R. § 416.920c(a).[2] Specifically, an ALJ is now required to consider and articulate how persuasive he or she finds each medical opinion or

---

[2] Prior administrative medical findings include state agency consultant findings regarding the severity of a claimant's symptoms, whether a claimant's impairments meet or medically equal a listing, and a claimant's residual functional capacity. See 20 C.F.R. §§ 404.1513(a)(5); 416.913(a)(5). A "medical opinion" is a statement from a medical source about what a claimant can still do despite his or her impairments and whether the claimant has limitations in his or her ability to perform the physical, mental, or other demands of work. See 20 C.F.R. §§ 404.1513(a)(2); 416.913(a)(2).

4

prior administrative medical finding to be. 20 C.F.R. §§ 404.1520c(a)); 416.920c(a). In that regard, the regulations list numerous factors that are considered, as appropriate, with "supportability" and "consistency" being the most important. See 20 C.F.R. §§ 404.1520c(a) & (c); 416.920c(a) & (c). "Supportability is an internal check that references objective medical evidence and supporting explanations that come from the source itself. Consistency is an external check that references evidence from other medical and nonmedical sources." Bright v. Saul, No. 1:19CV504, 2020 WL 4483008, at *2 (M.D.N.C. Aug. 4, 2020).

Here, Plaintiff argues that the ALJ improperly rejected the opinion of Katie Martin, a licensed professional counselor. In a November 1, 2019 Mental Capacity Questionnaire, Ms. Martin indicated that Plaintiff had mild limitations in understanding, remembering, or applying information and in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace and in "adaption;" would require unscheduled breaks; and would miss more than four days of work per month. AR 1111-1118.

The ALJ did not find Ms. Martin's opinion to be persuasive. AR 25. In support of that conclusion, the ALJ explained that the opinion was not supported by treatment notes indicating that Plaintiff's "conditions improved with medications and that his memory, attention and concentration were generally intact." AR at 25; see also AR 18 (citing AR 766-767; 1060; 1063;

5

1068-1069 (medical records reflecting Plaintiff was fully oriented and alert; exhibited logical speech; normal mood, affect, insight, and judgment; intact memory, attention, and concentration; and reported in August 2019 that his medications "helped with mood some")); AR 22 (citing AR 699 (medical record reflecting Plaintiff has no impairment in memory, attention span, ability to concentrate or mood); AR 857-860 (Plaintiff reported spinal cord stimulator removes his leg pain, and that medications improved his back pain some); AR 1101 ("patient has been managing his pain well on oxycodone")).

Additionally, the ALJ noted that Ms. Martin's opinion was in "check-box" form and relied heavily on Plaintiff's self-reported symptoms. AR 25. While a conclusory, stand-alone "check box" form is not favored, such a form may constitute some evidence of a claimant's functional limitations if it is appropriately supported by other evidence in the record. See Williams v. Colvin, No. 1:14cv18-MOC-DLH, 2015 WL 1000321, at *7 (W.D.N.C. March 6, 2015); Thomas v. Berryhill, No. 4:16cv15-D, 2017 WL 1047253, at *7 (E.D.N.C. Feb. 15, 2017) (check box or fill in the blank forms are weak evidence unless supported by medical records). Here, as discussed above, the ALJ explained why the check-box form was not supported by Plaintiff's treatment records.

Finally, the ALJ explained that Ms. Martin's opinion was inconsistent with Plaintiff's "very conservative mental heath treatment and his daily activities, including his ability to care for himself, care for his children, cook,

6

clean, and drive." AR 25; see also AR 18-19 (discussing Plaintiff's minimal mental health treatment and reported daily activities); AR 23-24 (discussing AR 1083, 1011, 1087 (records reflecting that Plaintiff cares for his children and helps get them ready for school and with homework, that he takes them to the park most afternoons, prepares meals, can go shopping, and can do some light household chores, reported getting metal in his eye while working with metal, and reported that he was doing more around the house to help when his wife was pregnant)).

Plaintiff argues that the ALJ failed to provide "an accurate and logical bridge" between the evidence and his conclusions, and that the ALJ "simply disagree[d]" with Ms. Martin's opinions. See Doc. 17 at 7 & 8. However, as discussed above, the ALJ explained the basis for his finding that Ms. Martin's opinion was not persuasive and provided substantial evidence to support that conclusion. See Petty v. Saul, No. 1:19-cv-00012-FDW, 2020 WL 1441436, at *4 (W.D.N.C. March 20, 2020) ("The ALJ considered Dr. Ocloo's opinion in light of the rest of the record and decided it warranted 'some' weight. The ALJ provided substantial evidence for her weight determination; therefore, the Court will not disturb the ALJ's decision").

### B. Plaintiff's Subjective Complaints

Plaintiff also argues that the ALJ erred in rejecting his testimony regarding the extent of his pain, use of a cane, need to change positions

7

frequently, and need to lay on the couch for two to three hours a day. See Doc. 17 at 9-11.

In evaluating the intensity, persistence and limiting effects of an individual's symptoms, an ALJ is to consider factors such as the individual's medical history, treatment history, and daily activities. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029 (Mar. 16, 2016) (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)).

Here, the ALJ discussed Plaintiff's daily activities as well as medical records, including those regarding Plaintiff's mental health, surgeries, ongoing complaints of pain, and antalgic gait. See AR 21-22 (citing, for example, AR 469, 491, 609 (regarding Plaintiff's discectomies and the placement of spinal cord stimulator); AR 857-860 & 622 (reflecting antalgic gait)). The ALJ also pointed to other records reflecting that Plaintiff exhibited full strength in his lower and upper extremities and reported improvement with the stimulator and medications. AR 21-22 (citing, for example, AR 794-795; 696; 699 (treatment records reflecting full strength; normal gait)).

Additionally, the ALJ stated that Plaintiff had not attempted "other forms of conservative treatment such as chiropractic care or recent physical therapy" and that Plaintiff did not appear to require "inpatient admissions or frequent emergency care for stabilization of back pain." AR 23. The ALJ

explained that use of a cane was "not documented in the record and does not appear to be prescribed by his medical providers." AR 23.

Under these circumstances, the undersigned is not left to guess at the foundations for the ALJ's conclusions and finds that the ALJ explained his determination regarding Plaintiff's subjective complaints adequately. See Brown v. Commissioner Social Security Administration, 873 F.3d 251, 269 (4th Cir. 2017) ("the ALJ must build an accurate and logical bridge from the evidence to his conclusion that [the claimant's] testimony was not credible") (internal quotations and citations omitted).

### C. Hypothetical Posed to the VE

A "hypothetical question is unimpeachable if it 'adequately reflect[s]' a residual functional capacity for which the ALJ had sufficient evidence." Fisher v. Barnhart, 181 Fed. Appx. 359, 364 (4th Cir. 2006) (unpublished) (citing Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (alterations in original).

Here, the hypothetical upon which the ALJ relied is consistent with the limitations set forth in Plaintiff's RFC.

Plaintiff, however, contends that additional limitations should have been recognized. Specifically, Plaintiff asserts that the ALJ should have relied on the VE's testimony that an individual who (1) "could not sit, stand, and or walk in some combination for a total of eight hours a day…with the remaining time spent laying down or reclined with feet elevated," (2) would be off task 20% of

9

the time due to pain or the need for unscheduled breaks, or (3) "would have three or more absences a month" would be precluded from employment. See AR 62. These proposed limitations appear to be based on Plaintiff's testimony regarding his subjective complaints and the limitations set forth in Ms. Martin's opinion. As discussed above, though, the ALJ explained and appropriately supported his decision not to include such limitations in Plaintiff's RFC.

### D. Plaintiff's Constitutional Challenge[3]

42 U.S.C. § 902(a)(3) provides that the "[a]n individual serving in the office of Commissioner [of the Social Security Administration] may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." Plaintiff argues that this removal provision is unconstitutional, and therefore his case should be remanded for a hearing before a new ALJ. Doc. 19 at 1.

Plaintiff relies on Collins v. Yellen, 141 S.Ct. 1761, 210 L.Ed.2d 432 (2021) and Seila Law, LLC v. Consumer Financial Protection Bureau, 140 S.Ct.

---

[3] In his Motion to Remand, Plaintiff additionally asks the Court to "stay this proceeding for a period of 30 days, to provide an opportunity for Counsel for the Defendant to receive instructions from the new senior management of the Agency, as to how the Agency determines it needs to proceed." Doc. 18 at 2. Plaintiff did not file a separate motion with supporting authorities seeking such a stay, and in any event the Commissioner has filed a substantive response to the Motion to Remand and Plaintiff has replied. Docs. 23 & 24.

2183, 207 L.Ed.2d 494 (2020), in which the United States Supreme Court found that statutory tenure protection provisions violated separation of powers principles. See Collins, 141 S.Ct. at 1783 ("for cause" restriction on the President's power to remove the Director of the Federal Housing Finance Agency, as set forth in the Housing and Economic Recovery Act of 2008 (Recovery Act), 122 Stat. 2654, 12 U.S.C. § 4501 et seq., violates the separation of powers); Seila Law, 140 S.Ct. at 2197 (Congress could not limit the President's power to remove the Director of the Consumer Financial Protection Bureau to instances of "inefficiency, neglect, or malfeasance").

In response to these decisions, the Office of Legal Counsel issued a Memorandum Opinion for the Deputy Counsel to the President which concluded that the President may remove the Commissioner of Social Security at will and that the statutory removal restriction in 42 U.S.C. § 902(a)(3) is unenforceable. See 2021 WL 2981542 (O.L.C.); see also Doc. 19-1.

Here, the Commissioner agrees that 42 U.S.C. § 902(a)(3) "violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." Doc. 23 at 1. The parties disagree, however, as to how § 902(a)(3) should effect the ALJ's decision in this matter.

As one court in this district recently explained:

11

> In Collins v. Yellen, 141 S. Ct. 1761 (2021), the Supreme Court recently held that where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction caused his alleged harm. The Collins Court reasoned that the relevant agency officials were "properly appointed" pursuant to a statute that exhibited "no constitutional defect in the ... method of appointment" and that "the unlawfulness of [a] removal provision" does not strip [an official] of the power to undertake the other responsibilities of his office[.]" The Court continued that "there is no reason to regard any of the actions taken" by the agency during this period "as void." Id. at 1787, 1788 n.23.
>
> Osborne v. Kijakazi, 5:21-cv-9-MOC, 2021 WL 5890668, at *3 (W.N.D.C. Dec. 13, 2021).

Here, Plaintiff seems to argue that he has been harmed by § 902(a)(3) because the changes to how adjudicators assess medical opinions and prior administrative medical findings for applications such as Plaintiff's can be traced back to "the improperly appointed and now removed Commissioner." Doc. 24 at 1.[4]

However, Plaintiff has not explained – even if this matter were to be remanded to a new ALJ – why that ALJ would be compelled to apply the rules for analyzing opinion evidence that governed the review of applications submitted prior to March 27, 2017. Relatedly, even if the "treating physician

---

[4] Presumably, Plaintiff believes that his claim would have been resolved in his favor under the "treating physician rule" which was in effect for applications filed prior to March 27, 2017. See also Doc. 17 at 7-8 (Plaintiff's brief in support of his Motion for Summary Judgment arguing that the ALJ erred in failing to assign controlling weight to the opinion of his treating mental health counselor, Ms. Martin).

rule" were applied, it is not clear why the outcome would be different here because the ALJ did consider whether Ms. Martin's opinions were consistent with her own and other treatment records. See Lewis v. Berryhill, 858 F.3d 858, 867 (4th Cir. 2017) (under previous regulations, an ALJ was "required to give 'controlling weight' to opinions proffered by a claimant's treating physicians so long as the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record") (quoting 20 C.F.R. § 404.1527(c)(2)) (alterations in original)).

Additionally, to the extent Plaintiff is arguing that the exercise of the Commissioner's rulemaking authority was invalid due to 42 U.S.C. § 902(a)(3), this argument has been rejected. See Collins, 141 S.Ct. 1761, 1788 n. 23 ("Settled precedent also confirms that the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office"). Likewise, while Plaintiff contends that remand is an appropriate remedy where a defect in the ALJ's appointment exists, see Doc. 19 at 2-3, this argument confuses potential problems concerning the process by which an official is appointed with potential problems regarding the manner by which the official may subsequently be removed. See Lucia v. SEC, 138 S.Ct. 2044 (2018); Hutchens v. Kijakazi, No. 1:20CV1124, 2021 WL 5834409, at *11 (M.D.N.C. Dec. 9, 2021), recommendation adopted (M.D.N.C.

13

Case 1:20-cv-00320-WCM Document 25 Filed 03/03/22 Page 13 of 15

Jan. 5, 2022) ("Unlike Appointments Clause cases, where courts have found the very authority under which a government official has acted unconstitutional…the unconstitutional removal provision at issue here did not impact then-Commissioner Saul's ability to carry out the duties of his office") (internal citations omitted); Lisa Y. v. Commissioner of Social Security, No. C21-5207-BAT, ---F.Supp.3d.---, 2021 WL 5177363 at *7 (W.D. Wash. Nov. 8, 2021) (explaining that the Supreme Court in Collins rejected the argument that an invalid removal provision rendered the agency's actions void from the outset).

Finally, "the examples provided by the Supreme Court in Collins of situations in which a plaintiff was actually harmed by an unconstitutional removal protection provision suggest that the bar is quite high." Helms v. Commissioner of Social Security, No. 3:20-cv-589-MOC, 2021 WL 5710096, at *2 (W.D.N.C. Dec. 1, 2021); see also Brand v. Kijakazi, No. 2:20-cv-02219-NJK, ---F.Supp.3d---, 2021 WL 5868131, at *6 (D. Nev. Dec. 10, 2021) (rejecting plaintiff's argument that President Biden's statements regarding Saul's firing evidenced a "strong possibility" of harm as "too conclusory, speculative, and attenuated"). Here, Plaintiff has not established he was actually harmed by 42 U.S.C. § 902(a)(3). See Helms, 2021 WL 5710096, at *3 ("The Court finds that it is implausible that the Commissioner's protection from removal from office, whether constitutional or not, could have affected ALJ Goodson's decision or

14

any other aspect of the administrative litigation in a material way"); Shelton v. Kijakazi, No. 1:21CV43-GCM, 2022 WL 130981, at *3 (W.D.N.C. Jan. 13, 2022) ("Plaintiff herein offers no evidence to demonstrate a nexus between Section 902(a)(3)'s removal restriction and the denial of his benefits claim").[5]

## VI. Conclusion

For the reasons stated above,

(1) Plaintiff's Motion for Summary Judgment (Doc. 16) is **DENIED**.

(2) Plaintiff's Motion to Remand (Doc. 18) is **DENIED**.

(3) Defendant's Motion for Summary Judgment (Doc. 21) is **GRANTED,** and this case is **DISMISSED**. The Clerk of Court is respectfully directed to enter a separate judgment in accordance with this Order, thereby closing the case.

Signed: March 3, 2022

W. Carleton Metcalf
United States Magistrate Judge

---

[5] Considering the authorities discussed herein, the undersigned does not reach the Commissioner's remaining constitutional arguments. See Doc. 23 at 10-17.